NEWMAN, Circuit Judge,
dissenting.
On this appeal from a PTO rejection, the court has applied a new ground of rejection — which the court calls “indefiniteness” — and issued a final judgment on that ground, although the applicant has had no opportunity to respond to the rejection. The panel majority’s ab initio decision is improper, for the Federal Circuit has issued a final judgment on an issue that was not decided by the Board, contrary to 35 U.S.C. § 144, which authorizes the Federal Circuit to “review the decision from which an appeal is taken on the record.”
The PTO had based its judgment of unpatentability on “anticipation,” a ground on which my colleagues announce they shall remain silent, although it is the only issue on appeal, as required by Securities & Exchange Commission v. Chenery Corporation, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (“The grounds upon which an administrative action must be judged are those upon which the record discloses that its action was based.”); Securities & Exchange Commission v. Chenery Corporation, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (“[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.”). Although the court remands to the PTO, in order the give the applicant the opportunity (indeed the right) to amend the claims or submit new evidence in light of the rejection, the applicant has had no opportunity to argue the merits of the definiteness rejection; the Federal Circuit’s judgment is final and binds the Board on remand. Thus the applicant cannot argue, or submit evidence to show that a person of ordinary skill in computer programming would not find the claims indefinite. While the court cites 37 C.F.R. § 41.50(b), which instructs the Board to remand after it raises a new ground of rejection, this court has finally decided that the claims as written are unpatentable on this ground, placing a heavy appellate thumb on the scale of remand. Remanding, as here, to the Board to allow the applicant to conform to the court’s adverse final judgment on indefiniteness is far different from remanding to the Board to consider claim definiteness in the first instance. I must, respectfully, dissent.
Discussion
The patent examiner, affirmed by the Board of Patent Appeals and Interferences, rejected the application claims on the ground of “anticipation” by a reference to Yang. The examiner stated that “[t]he structure corresponding to the reverse logistics means for transferring is a computer implemented with software. Therefore, any working computer (such as that disclosed in Yang) anticipates the structure corresponding to the means for transferring.” Final Office Action of February 21, 2006, at 2. Aoyama argues, correctly, that this ruling contradicts precedent, for “any working computer” is not a programmed special purpose computer as the specification contemplated. See, e.g., WMS Gam *1302 ing, Inc. v. Int’l Game Tech, 184 F.3d 1339, 1349 (Fed.Cir.1999) (“In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.”); Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1253 (Fed.Cir.2005) (“A computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm.”). The PTO’s ruling of “anticipation” on this ground is the only issue on this appeal; there was no rejection on the ground of claim indefiniteness.
On appeal Aoyama argues that the structure shown in the specification avoids “anticipation” of the means-plus-function term “reverse logistics means.” The PTO states that the Board correctly “refused to read limitations from Figure 8 into the claims.” PTO Brief 9. The PTO takes the irregular position that, contrary to the statutory requirements of § 112 ¶ 6,[1] the structure in the specification cannot avert anticipation of the “means” term in the claim. Thus the Board deemed the claim to be “anticipated” by any general purpose computer, stating that the Aoyama specification “does not describe any structure that would alter a general purpose computer into a special purpose computer.” Ex parte Aoyama, No. 2009-6755, at 4 (B.P.A.I. June 16, 2010) (Decision on Rehearing). That is incorrect, for a term in means-plus-function form is construed in accordance with § 112 ¶ 6, and requires examination in those terms.
My colleagues reject the claims, for the first time, on the ground of “indefiniteness,” deeming the specification’s Figure 8 flow chart and descriptive text inadequate to define the claimed subject matter. Figure 8 is “a flowchart of a method for reverse logistics in accordance with an exemplary embodiment of the present invention,” and is presented in routine format and detail:
*1303 [[Image here]]
The specification includes a lengthy description of Figure 8, including:
Method 800 allows an order controller and a supply chain management system to use reverse logistics to optimize the cost of goods, shipping costs, to accommodate promotions, product rollout, product deletions, product replacements, or to perform other suitable functions.
Application at 0088. The specification describes the several elements of the claims, and states that they
can be implemented in hardware, software, or a suitable combination of hardware and software, and each of which can be one or more software systems operating on separate general purpose processing platforms. As used herein, a hardware system can include discrete semiconductor devices, an application-specific integrated circuit, a field programmable gate array or other suitable devices. A software system can include one or more objects, agents, threads, lines of code, subroutines, separate software applications, user-readable (source) code, machine-readable (object) code, two or more lines of code in corresponding software applications, databases, or other suitable software architectures.
Id. at 0019. The specification further describes Figure 8 with reference to the claimed method, starting with the receipt of inventory data:
Method 800 begins at 802 where warehouse and distribution center inventory data are received. In one exemplary embodiment, warehouse data can include actual or implied inventory levels, inventory minimum and maximum levels, and other suitable data. Distribution center inventory data can include available *1304 short-term inventory space data, actual inventory data, implied inventory data, or other suitable data. The method then proceeds to 804.
Id. at 0089. Additional text referring to Figure 8 explains that the determination whether to transfer a product between warehouses, a controller, or a distribution center is based on parameters such as space and cost savings:
At 804 warehouse inventory data and distribution inventory data is compared. The method then proceeds to 806 where it is determined whether it is necessary to transfer a product between warehouses. In one exemplary embodiment, the transfer of product between warehouses can be performed in order to increase warehouse space at a first warehouse to accommodate a larger shipment than would be able to be accommodated, so as to realize cost savings for the cost of the product. In another exemplary embodiment, product can be transferred between warehouses to accommodate product rollout, product deletion, product replacement, or other suitable functions. If it is determined at 806 that product transfer between warehouses is not required the method proceeds to 810. Otherwise, the method proceeds to 808 where shipping data is generated and transmitted to an appropriate location, such as a warehouse, a shipper, or other suitable locations. The method then proceeds to 810.
At 810 it is determined whether the product needs to be transferred to a controller. In one exemplary embodiment, the operator of the order controller can also include warehouse space that is under the operator’s control, so decisions can be made to transfer goods to the operator to realize lower cost of goods shipped or stored at the warehouse, or based on other suitable factors. If it is determined at 810 that product should be transferred to or from the product controller, the method then proceeds to 814. Otherwise, the method proceeds to 812 where shipping data is generated and transmitted to the affected parties. The method then proceeds to 814.
At 814 it is determined whether products should be transferred to a distribution center. In one exemplary embodiment, temporary storage at a distribution center can be used to relieve storage limitations at a warehouse, at the product controller, or in other suitable locations. If it is determined that the product should not be transferred to the distribution center, the method proceeds to 818 and terminates. Otherwise, the method proceeds to 816 and shipping data is generated and transmitted to appropriate parties.
Id. at 0090 to 0092. It is unclear how the panel majority concludes that the specification renders the claims “indefinite” as a matter of law, for this form and content of flow chart and text are in accordance with the established protocols for describing computer-implemented processes. At a minimum, if my colleagues believe that this new ground of rejection is likely to be warranted, the application should be remanded to the PTO for interactive examination on this new ground.
The Board found the claims “anticipated,” and although my colleagues acknowledge that “a claim cannot be both indefinite and anticipated,” Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed.Cir.2010), my colleagues resolve this conflict by declining to discuss it, stating that they “do[] not reach the ground relied on by the Board,” Maj. Op. at 1298, defying the requirements for appellate review of agency action. See Chenery, 318 U.S. at 94, 63 S.Ct. 454 (“[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in *1305 exercising its powers were those upon which its action can be sustained.”); Chenery, 332 U.S. at 196, 67 S.Ct. 1575 (“If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.”); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (courts “may not supply a reasoned basis for the agency’s action that the agency itself has not given”).
The mode of describing computer-implemented methods in patent specifications is standardized, and the presentation herein is in routine accordance with established protocols. The court has remarked that the requisite detail does not set “a lofty standard.” Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1340-41 (Fed.Cir.2008) (“minimal disclosure” of the programmatic detail of computer implemented methods). “[T]he sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart.” Aristocrat Techs. Australia Pty Ltd. v. Int’l Game Tech., 521 F.3d 1328, 1337 (Fed.Cir.2008).
In AllVoice Computing PLC v. Nuance Communications, Inc., 504 F.3d 1236 (Fed.Cir.2007) the court explained that a flow chart can provide the structure for a means-plus-function claim. My colleagues indeed find that “[t]he only portion of the specification linked to [the claimed] function, and the only portion of the specification that Mitsui contends describes the corresponding structure, is the flowchart of Figure 8 and the description thereof in the specification,” Maj. Op. at 1297, but also curiously find that “the particular flowchart of Figure 8 and its accompanying description fail to provide any structure or algorithm whatsoever.” Maj. Op. at 1298.
The majority opinion does not address whether a person of ordinary skill in computer programming would understand Figure 8 and the descriptive text as a structural algorithm that could be routinely programmed to perform the function of generating transfer data. See Aristocrat, 521 F.3d at 1337 (“[T]he proper inquiry for purposes of section 112 paragraph 6 analysis is to look at the disclosure of the patent and determine if one of skill in the art would have understood that disclosure to encompass software to perform the function and been able to implement such a program.” (internal quotation marks omitted)); see also Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1214 (Fed.Cir.2003) (“[H]ere there would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use.”).
Aoyama has had no opportunity to develop a record on this aspect, for it was not raised during examination, and was not a ground of rejection by the Board. In Biomedino, LLC v. Waters Technologies Corporation, 490 F.3d 946, 950 (Fed.Cir.2007) the court stated that “[w]hile the specification must contain structure linked to claimed means, this is not a high bar.” Our appellate role is not to raise the bar, but to apply it, predictably and reliably. There have indeed been situations in which the description in the specification was inadequate to support the claimed function. See, e.g., Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359 (Fed.Cir.2008) (the words “bank computer” without more are insufficient to constitute an algorithm for “means for generating an authorization indicia”); Finisar, 523 F.3d at 1323 (the word “software” without more is not sufficient as an algorithm for “database editing means”). However, “algorithms in the specification need only disclose adequate *1306 defining structure to render the bounds of the claim understandable to one of ordinary skill in the art.” AllVoice, 504 F.3d at 1245. Precedent does not require a “highly detailed description of the algorithm to be used to achieve the claimed functions in order to satisfy 35 U.S.C. § 112 ¶ 6,” Aristocrat, 521 F.3d at 1338, for “knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness.” Creo Prods., Inc. v. Presstek, Inc., 305 F.3d 1337, 1347 (Fed.Cir.2002).
Computer-implemented innovation has generated a well-established protocol that takes cognizance of the characteristics of computer technology and the general state of knowledge of persons experienced in this field, and thus “permits a patentee to express [the] algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.” Finisar, 523 F.3d at 1340. Precedent contains many examples of descriptions, figures, flow charts, and text, indistinguishable in form and content from those herein. See, e.g., Overhead Door Corp. v. Chamberlain Group, Inc., 194 F.3d 1261, 1271-72 (Fed.Cir.1999) (Figure 3 and its accompanying description provided the structure for a “memory selection second switch means”); AllVoice, 504 F.8d at 1245 (the patent’s figures and accompanying description were “sufficient algorithmic structure” for means-plus-function claims); WMS Gaming, 184 F.3d at 1349 (Figure 6 and the descriptive text provided the “structure” for the “means for assigning”). In no case was computer code included in the patent specification; neither machine code nor source code is required to provide structure to a description of the claim function. Aristocrat, 521 F.3d at 1338.
The standard of whether the disclosure is sufficiently “definite” is whether a person of ordinary skill could program the computer to perform the stated function based on that disclosure. See Telcordia Techs., Inc. v. Cisco Sys., Inc., 612 F.3d 1365, 1377 (Fed.Cir.2010) (“[C]laim definiteness depends on the skill level of an ordinary artisan”). My colleagues do not find that this standard is not here met. Instead, the court draws a new and undefined distinction of “high level process flow,” Maj. Op. at 1298, changing the rules for computer-implemented inventions. In Atmel Corporation v. Information Storage Devices, Inc., 198 F.3d 1374, 1382 (Fed.Cir.1999), the court stated that “[t]he requirement of specific structure in § 112, ¶ 6 thus does not raise the specter of an unending disclosure of what everyone in the field knows.” Any change in the practice of how computer implemented methods are required to be presented in patent specifications has wide impact. No basis for such a change is here shown. I must, respectfully, dissent from the changed law, and from the court’s appellate procedure that deprives the applicant of the opportunity to contest this new and procedurally final ground of rejection.

. 35 U.S.C. § 112 ¶ 6: An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.