NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CLOUD FARM ASSOCIATES LP,**
*Plaintiff-Appellant*

**v.**

**VOLKSWAGEN GROUP OF AMERICA, INC., ZF SACHS AG,**
*Defendants-Appellees*

_____

2016-1448

_____

Appeal from the United States District Court for the District of Delaware in No. 1:10-cv-00502-LPS, Chief Judge Leonard P. Stark.

_____

Decided: January 9, 2017

_____

PATRICK J. KELLEHER, Drinker Biddle & Reath LLP, Chicago, IL, argued for plaintiff-appellant.

GEORG CHRISTIAN REITBOECK, Andrews Kurth Kenyon LLP, New York, NY, argued for defendant-appellee Volkswagen Group of America, Inc. Also represented by MICHAEL LENNON; SUSAN A. SMITH, Washington, DC.

MARTIN B. PAVANE, Cozen O'Connor, New York, NY, argued for defendant-appellee ZF Sachs AG. Also represented by LISA A. FERRARI, DARREN SCOTT MOGIL.

———————————

Before PROST, *Chief Judge,* CLEVENGER, and REYNA, *Circuit Judges.*

CLEVENGER*, Circuit Judge.*

Cloud Farm Associates LP ("Cloud Farm") sued Volkswagen Group of America ("Volkswagen") and ZF Sachs AG ("ZF") (collectively, "defendants") in the United States District Court for the District of Delaware alleging infringement. Specifically, Cloud Farm alleged that Volkswagen had infringed four patents directed towards vehicular tilt control apparatuses, and that ZF had infringed three of those patents. Following two rounds of claim construction, the parties stipulated that, if the district court's constructions were not reversed or modified on appeal, Cloud Farm could not prove infringement of any asserted claims. Joint Stipulation 4-5, ECF 349-1. Cloud Farm and Volkswagen further stipulated that under the district court's constructions, two asserted claims are invalid as indefinite under 35 U.S.C. § 112. *Id.* at 5–6. The district court adopted the joint stipulation and entered a final judgment of non-infringement and invalidity. Final Judgment 1-2, ECF 350. Cloud Farm appeals the district court's construction of several claim terms. Because we agree with the district court's construction of those terms, we affirm.

I

Cloud Farm is the owner of the four patents at issue: U.S. Patent Nos. 5,437,354 ("the '354 Patent"), 5,529,153 ("the '153 Patent"), 5,971,115 ("the '115 Patent'), and 5,979,616 ("the '616 Patent"), each of which is titled "Tilt Control Apparatus for Vehicles." Cloud Farm asserted all patents against Volkswagen, and all but the '616 patent

against ZF. The patents are directed towards devices that limit body roll or tilt in a car while it is going around a turn or curve by limiting flow of hydraulic fluid between chambers within the apparatus. In addition to working as a tilt control apparatus, the patented device can also be used as a suspension shock absorber or be used in conjunction with a vehicle's conventional shock absorbers. The patented products include a sensing component that activates the flow-limiting component at a pre-set level of body roll, or in response to certain vehicle inputs such as speed or steering angle. Claim 1 of the '354 patent is representative of the asserted claims of the '354, '153, and '115 patents, all of which contain the "seal" and "prevent" terms at issue on appeal:

> 1. In a vehicle having an interior and an exterior, a transverse axle and a body, and being subject to swaying and tilting when the vehicle turns a corner or is driven around a curve, the improvement which comprises an apparatus for limiting the swaying and tilting movement of said vehicle comprising, on at least one side of the vehicle, a chamber partially filled with hydraulic fluid and having an upper end and a lower end; a moveable piston sealing the lower end of said chamber, attached to said transverse axle; the upper end of the chamber being closed and attached to said body of the vehicle; a plate within said chamber having a substantially central opening separating said fluid within the chamber into a lower portion and an upper portion; movable sealing means within said chamber and when activated seals said central opening; means for moving the sealing means to seal said opening; means for sensing the tilting movement of said vehicle, electrically combined with means for moving the sealing means to seal said opening when the sensing means is activated at a predetermined tilt position

of the body to prevent flow of said fluid from the lower portion of the chamber into the upper portion of the chamber and thus prevent tilting of the frame or body of the vehicle.

'354 patent col.6 ll.12–35 (filed Feb. 10, 1994).

The '616 patent is a continuation of the '153 patent, and describes additional sensing devices for use in the tilt-controller system. Cloud Farm asserted claims 1 and 5 of the '616 patent against Volkswagen only. Those claims are reproduced in full below:

1. Apparatus for a vehicle having at least the following two structural elements, a transverse axle and a body comprising, on each side of the vehicle, a chamber partially filled with hydraulic fluid, a movable piston at one end of and within said chamber and attached to one of said structural elements; the other end of said chamber being attached to the other end of said structural elements of the vehicle; a fixed plate within said chamber having a sealable opening to separate fluid within said chamber into two portions above and below said fixed plate; sealing means within said chamber adapted to seal said sealable opening; a steering wheel disposed between the two sides of the vehicle within a steering column rotatable through an angle from 0 to 180 degrees; sensing means within said steering column to sense rotation of said steering wheel and a pre-set minimum speed of said vehicle, such that when rotation of said steering wheel is below about 20 degrees or beyond about 160 degrees, at or above said pre-set minimum speed, said sensing means will send a signal to said sealing means; thereby, when activated by said sensing means, said sealing means will seal said sealable opening in said plate to prevent flow of said fluid from one portion to the

other portion of said chamber, whereby tilting of one of said structural elements toward said other structural element is prevented.

5. A vehicle having a suspension system disposed between a transverse axle and a body of said vehicle wherein the vehicle is equipped with means for controlling the suspension system, the improvement comprises means for continuously sensing angular or steering movement of said vehicle and means for activating said means for controlling said suspension system at a pre-set angle of movement of said vehicle depending upon the speed of the vehicle in accordance with the Table set forth below:

| TABLE | |
|---|---|
| Vehicle Speed (miles/hour) | Turning Angle to Activate Suspension System Control (degrees) |
| 120 | 1 |
| 100 | 2 |
| 80 | 3 |
| 60 | 6 |
| 40 | 7-8 |
| 20 | 9-10 |
| 10 | 13-15 |

to convert the normally fast rate of movement of the body toward said axle to a slower rate of movement of said body toward said axle.

'616 patent col.13 ll.25-38, col.15 l.1 – col.16 l.16 (filed Feb. 6, 1998).

## II

The district court conducted two Markman hearings and construed multiple claim terms. *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. 10-cv-502, 2012

WL 3069405 (D. Del. July 27, 2012) ("Markman I"); *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. 10-cv-502, 2015 WL 4730898 (D. Del. Aug. 10, 2015) ("Markman II"). Five of those claim terms are at issue here. The first terms, "seal" and "prevent," are found in all asserted claims of the '354, '153, and '115 patents and in claim 1 of the '616 patent.[1] The district court construed both of these terms to mean "stop." *Markman I* at *4–6, *8, *13–14; *Markman II* at *6. As examples, the district court construed "seal," "seals," and "sealing" to mean "stopping the flow of hydraulic fluid," and construed "prevent flow of said fluid" to mean "to stop flow of said hydraulic fluid." *Id.* at *4.

The district court summarized that the parties' disagreements over these terms "concern whether, upon sensing excessive vehicle tilt, the system claimed in the patents-in-suit stops (as argued by Defendants) or merely reduces (as argued by Plaintiff) the flow of hydraulic fluid from one portion of the tilt controller to the other, the movement of the piston, and the tilting of the vehicle body." *Id.* at *5. The court sided with defendants, reason-

---

[1] The particular claim terms at issue are: "seal," "seals," and "sealing" (found in claims 1 8, and 16 of the '354 patent and in claims 1 and 3 of the '153 patent); "prevent flow of said fluid" (found in claims 1 and 8 of the '354 patent and claim 1 of the '153 patent) and "prevent any flow of said fluid" (found in claim 16 of the '354 patent); "preventing tilting of the frame or body of the vehicle" (found in claim 1 of the '354 patent) and "preventing tilting of the body of the vehicle" (found in claim 8 of the '354 patent); "prevent movement of the piston and further tilting of the body of the vehicle" (found in claim 1 of the '153 patent); "sealing means" (found in claim 1 of the '115 patent, claim 1 of the '616 patent, claim 1 of the '153 patent, and claims 1, 8 and 16 of the '354 patent).

ing that their constructions are supported by the intrinsic evidence. The court found that the terms "seal," "seals," and "sealing" are used consistently throughout the patents to mean "completely stopping the flow of hydraulic fluid." *Id.* The district court considered and expressly rejected Cloud Farm's argument that "seal" and "prevent" should be construed more broadly to include the reduction of flow in addition to completely stopping it. The court noted that the words "hinder flow" (as proposed by Cloud Farm) never appear in any patent specification, and no patent explains how it would be possible to accomplish partial sealing. *Id.*

The remaining terms at issue are limitations in means-plus-function claims. The first of these, "sensing means within said steering column to sense rotation of said steering wheel and a pre-set minimum speed of said vehicle, such that when rotation of said steering wheel is below about 20 degrees or beyond about 160 degrees, at or above said pre-set minimum speed, said sensing means will send a signal to said sealing means," is found in claim 1 of the '616 patent (hereinafter, the "sensing means within said steering column" term). The district court construed the function to be "sensing rotation of said steering wheel and a pre-set minimum speed of said vehicle, such that said sensing means will send a signal to said sealing means when rotation of said steering wheel is below about 20 degrees or beyond about 160 degrees, at or above said pre-set minimum speed." *Markman II* at *8–10. However, the district court held that the patent does not describe a structure performing the claimed function. *Id.* The district court rejected Cloud Farm's proposed structure because it "has nothing to do with **sensing vehicle speed**, which is what the claimed function requires" and so it found the claim to be indefinite. *Id.* at *8–10 (emphasis in original).

The second is "means for controlling the suspension system," and is part of claim 5 of the '616 patent (herein-

after, the "means for controlling" term).  The district court found the function to be "controlling the suspension system," but again found no corresponding structure.  *Id*. Cloud Farm argued that the function should be "altering the suspension system," but the district court rejected its proposal, explaining that "altering" is materially different from "controlling," because "the latter implies an ability to dictate how the entire suspension system operates whereas the former requires only influencing the suspension system." *Id*. at \*10.  Cloud Farm conceded that there was no structure disclosed that could control the entire suspension system, and so the district court found this claim language to be indefinite as well.  *Id*. at \*11.

The final term, found in claim 5 of the '616 patent, is

"means for activating said means for controlling said suspension system at a pre-set angle of movement of said vehicle depending upon the speed of the vehicle in accordance with the Table [reproduced *supra* Part I] to convert the normally fast rate of movement of the body toward said axle to a slower rate of movement of said body toward said axle." (hereinafter, the "means for activating" term).

The district court construed the function to be

"activating said means for controlling said suspension system at a vehicle wheel turning angle of

- 1 degree if the vehicle speed is 120 miles per hour,

- 2 degrees if the vehicle speed is 100 miles per hour,

- 3 degrees if the vehicle speed is 80 miles per hour,

- 6 degrees if the vehicle speed is 60 miles per hour,

- 7-8 degrees if the vehicle speed is 40 miles per hour,

- 9-10 degrees if the vehicle speed is 20 miles per hour, and

- 13-15 degrees is the vehicle speed is 10 miles per hour,

to convert the normally fast rate of movement of the body toward said axle to a slower rate of movement of said body toward said axle."

*Id.* at *12.

Again, the district court found that the specification does not describe a corresponding structure. The court found that the specification only disclosed a microprocessor that could implement this term's function, noting that this court's precedent requires that more must be disclosed than simply a general purpose computer or microprocessor. *Id.* at *13 (citing *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008)).

The parties stipulated that under the district court's claim constructions, Cloud Farm would not be able to prove infringement of the asserted claims of the '354, '153, and '115 Patents, or of claim 1 of the '616 Patent, at least because the accused CDC systems "do not stop flow of hydraulic fluid, do not stop the frame or body of the vehicle from tilting, and do not stop any further movement of the piston and further tilting of the body of the vehicle." Joint Stipulation 4-5, ECF 349-1. Since the district court also held that the '616 Patent does not describe structures for performing the claimed functions of the "sensing means within said steering column," "means for controlling," and "means for activating" claim limitations, Cloud Farm and Volkswagen further stipulated that under the district court's constructions, the asserted claims 1 and 5 of the '616 Patent are invalid as

indefinite under 35 U.S.C. § 112. *Id.* at \*5–6. Based on the joint stipulation, the district court entered final judgment, granting judgment of non-infringement of all asserted claims of the '354, '153, and '115 Patents, and of claim 1 of the '616 Patent, and judgment of invalidity of claims 1 and 5 of the '616 Patent. Final Judgment 1-2, ECF 350.

Cloud Farm appealed to us, and we have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1295(a)(1).

### III

Where the district court's claim construction relies only on intrinsic evidence, the construction is a legal determination reviewed de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–42 (2015). A district court's subsidiary fact findings about extrinsic evidence are reviewed for clear error. *Id.* Claim terms are generally given their ordinary and customary meaning, which is the meaning they would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). The same term should be construed consistently throughout the same patent and any related patents sharing a common specification. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997) ("[W]e are obliged to construe the [asserted term] consistently throughout the claims.").

Claim construction begins with the language of the claims. *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014). While the claims themselves "provide substantial guidance as to the meaning of particular claim terms," they do not stand alone; rather, "they are part of a fully integrated written instrument." *Phillips*, 415 F.2d at 1314–15. Thus, the claims should be read in light of the specification. *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1327 (Fed. Cir. 2009) (citing *Phillips*, 415 F.2d at 1315). The specification "is

always highly relevant to the claim construction analysis" and can be dispositive, as "it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.2d at 1315. However, it is improper to import a limitation from the specification into the claims. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004). The prosecution history may also be considered because it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." *Phillips*, 415 F.2d at 1317.

We depart from the plain and ordinary meaning in only two instances. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). The first is when a patentee acts as his own lexicographer. *Id.* The second is when the patentee disavows the full scope of the claim term in the specification or during prosecution. *Id.* If prosecution history does show disclaimer, then the patentee is prevented from reclaiming subject matter that was surrendered through statements or claim amendments. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

IV

The first disputed claim construction concerns the terms "seal" and "prevent," which are found in all asserted claims of the '354 , '153, and '115 patents and in claim 1 of the '616 patent. The parties stipulated that, under the court's construction, the accused devices do not infringe because they do not stop flow of hydraulic fluid, stop the frame or body of the vehicle from tilting, or stop any further movement of the piston and further tilting of the body of the vehicle. Joint Stipulation 1-7, ECF 349-1. While Cloud Farm argues that the district court construed these terms too narrowly, Volkswagen contends that the district court correctly construed the terms. We

agree with the district court that the intrinsic evidence clearly supports its constructions.

Cloud Farm argues that the district court "essentially imposed the word 'hermetic' on the 'seal' terms." Appellant Br. 11. It asserts that the plain meanings of "seal" and "prevent" are not so narrow, and the district court should have construed both of these terms to mean "minimizing" or "hindering." According to Cloud Farm, the specifications support its construction of these terms. Cloud Farm acknowledges that there is one disclosed embodiment that completely stops the flow of hydraulic fluid. Appellant Br. 14 (citing '354 patent col.4 ll.19–25). But, Cloud Farm cites another embodiment, where the device can be used as both a shock absorber and a tilt controller, in which the opening can be adjusted in size to provide shock absorption, allowing fluid to continue to flow. *Id.* at 14-15 (citing '354 patent col.5 ll.51–67). As the district court decided, and defendants argue on appeal, Cloud Farm's citations to examples in the specifications are misplaced. Those citations which allow for partial closure are in relation to the invention's shock absorption function, not its tilt controlling function, which is what is relevant to the asserted claims. Thus, any language discussing "damping" or "cushioning" is irrelevant to the claim constructions here because the asserted claims are directed only towards the tilt controlling function.

We find that the district court's determination of the plain and ordinary meanings of "seal" and "prevent" are supported by the intrinsic evidence. The district court rightly determined that the plain and ordinary meaning of both terms is "to stop," after considering the claim language in light of the specification. *See Phillips*, 415 F.3d at 1321 ("[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan **after reading the entire patent**." (emphasis added)); *see also Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir.

2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."). There are multiple places in the '354 and '153 patent specifications that state that upon sensing excessive tilt, the opening in the plate is closed so that fluid flow is stopped, and any further piston movement and vehicle tilting is stopped as a result. *See, e.g.*, '354 patent col.4 ll.19–27 ("However, when tilting or unusual acceleration is encountered, the sensing unit will activate the solenoid and cause the seal to close the opening in the lockplate. No fluid can then flow from the lower chamber into the reservoir chamber. This prevents any further downward movement or tilting of the body of the vehicle."); *id.* at col.4 ll.48–54 ("Basically, the solenoid, activated by the electrical circuit which in turn was activated by the mercury switch . . . , serves to seal the opening at a predetermined point in the tilting of the vehicle. This closure prevents any further flow of fluid into reservoir; and also prevents any further tilt of body."). The district court's constructions also align with the embodiments disclosed in the specifications. *See, e.g.*, '354 patent col.5 l.67 – col.6 l.5 ("[Should a tilt be encountered as a car goes around a turn the sensor will activate the solenoid which will close the seal so that there is no longer any opening in the piston assembly and lockplate. Fluid in the bottom chamber can then no longer enter the upper chamber and movement of the body downwardly is prevented."); '153 patent col.9 ll.53–58 ("The tilt sensing means [in figure 2D] sends its signal when excessive tilt is encountered; solenoid is activated; sealing means is drawn upwardly to seal the opening; flow of fluid and further movement of piston ceases; and further tilt is prevented.").

The district court found, and we agree, that there is no support in the specification for a tilt controller where flow is merely slowed. *Markman I* at \*5. As discussed above, the examples in the specifications cited by Cloud

Farm as support for its constructions are not relevant to claim construction because they do not address the tilt-controlling function at issue. Because the district court's constructions are consistent with the specification, and Cloud Farm's are not, the district court's constructions are correct. *See Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." (citation omitted)).

We additionally agree with defendants that the prosecution history supports the district court's constructions. All parties reference the patentee's amendment during prosecution of issued claim 16 of the '354 patent from "prevent any substantial flow" to "prevent any flow." The district court found, and we agree, that this amendment supports its constructions. Cloud Farm makes a claim differentiation argument, alleging that the district court erred in construing "preventing flow" (in claim 1 of the '354 patent) and "preventing any flow" (in claim 16 of the '354 patent) to have the same meaning. Arguing that the difference in wording is significant, Cloud Farm cites *Chicago Board Options Exchange, Inc. v. International Securities Exchange, LLC*, 677 F.3d 1361 (Fed. Cir. 2012), for the proposition that there is a "general presumption that different terms have different meanings." *Id.* at 1369. Thus, according to Cloud Farm, the district court should have construed "prevent" as "hinder" and "prevent any" as "eliminate." We do not find Cloud Farm's argument persuasive. Rather, we agree with ZF that Cloud Farm's amendment of issued claim 16 clearly disclaimed a claim scope that allows fluid flow when the seal is closed. Relatedly, the "prevent any flow" language in claim 16 does not alter the meaning of "prevent flow," as found in the other claims. Claim differentiation does not apply here because there are a number of other differences between claims 1 and 16. *See Andersen Corp. v. Fiber*

*Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) (stating that where the claims are not otherwise identical, claim differentiation does not apply). Therefore, the district court did not err by construing "prevent flow" and "prevent any flow" to both mean "to stop flow."

V

The next claim term in dispute is the means-plus-function limitation found in claim 1 of the '616 patent, "sensing means within said steering column." The patentee has a duty to link the claimed function to a structure in the specification to express the claim as a means-plus-function claim under § 112. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("[S]tructure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6."). When no structure in the specification is linked to the function in a means-plus-function claim element, that claim is indefinite under 35 U.S.C. § 112. *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1241 (Fed. Cir. 2007) ("[A] means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." (citation omitted)). We agree with the district court that no structure is linked to the function, and thus the claim is invalid.

Neither party objects to the district court's construction of the function, which involves both rotation of the steering wheel and speed of the vehicle. While Cloud Farm agrees with the district court that the specification discloses several structures for sensing the rotation of the steering wheel, it argues that the court erred by not finding a structure linked to the portion of the function

related to speed. Cloud Farm asserts that the specification clearly discloses such a structure, which it proposes is a "speed-measuring device, e.g., the vehicle's speedometer or RPM meter." Appellant Br. 21–22. We agree with Volkswagen that Cloud Farm's argument is waived because it failed to propose this structure at either claim construction hearing at the district court. Cloud Farm first proposed "a copper protrusion located on the steering column," Cloud Farm's Opening Claim Constr. Br. 9, ECF 264, and later proposed "a copper protrusion located on the steering column and a computer or microprocessor." Cloud Farm's Answering Claim Constr. Br. 7–8, ECF 271. This court's case law is clear that a party cannot introduce new claim construction arguments on appeal or alter the scope of the positions it took below. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) ("As [the doctrine of waiver] relates to claim construction, the doctrine has been applied to preclude a party from adopting a new claim construction position on appeal."); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("With a few notable exceptions, . . . appellate courts do not consider a party's new theories, lodged first on appeal. . . . In short, this court does not 'review' that which was not presented to the district court."). Here, Cloud Farm is attempting to do just that by proposing a new structure on appeal, and thus their argument has been waived. Even if Cloud Farm's argument was not waived, its proposed structure fails. The language of claim 1 requires that the sensing means are "within said steering column." The specification does not describe the speedometer or RPM meter as being within the steering column, and Cloud Farm fails to make any argument about the location of the speedometer or RPM meter on appeal.

V

The second means-plus-function limitation on appeal, "means for controlling," is found in Claim 5 of the '616

patent. We agree with the district court's construction of the function and its finding that no corresponding structure exists. Cloud Farm disputes the district court's construction of both the function and structure of this term. Cloud Farm argues that the patent does not support the district court's construction, which requires complete control of the vehicle's suspension system; rather, Cloud Farm contends that the patent only requires that the invention has the ability to merely "affect or adjust the suspension." Appellant Br. 22-24. We agree with the district court and Volkswagen that "the plain and ordinary meaning of the function associated with this term is 'controlling the suspension system.'" *Markman II* at *10–11. As cited by the district court, there are multiple places in the '616 specification that refer to controlling the entire suspension system. *See, e.g.*, '616 patent col.1 l.28, col.3 ll.62–67, col.4 ll.4–6, col.12 ll.49–52. Cloud Farm is unable to offer any evidence for why the term "controlling" should be replaced by the term "altering." If, as Cloud Farm argues, the patentee meant for the claim language to mean merely altering, the patentee should have clearly defined this function within the patent. *See Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 948 (Fed. Cir. 2007) ("[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means."). As the district court stated, "altering" is materially different from "controlling," and "suspension damping" is not the same as "suspension." *Markman II* at *10–11. Because the patentee did not offer in the patent its own definition of "controlling the suspension system," and because there is no evidence that the patentee meant anything but the ordinary meaning, we agree with the district court's construction of the function. Cloud Farm acknowledged that if the district court's definition of the function is correct, there is no corresponding structure. Supp. Claim Constr. Hearing Tr. 17:23 – 18:3, ECF 339. Because this court is also

unable to find a corresponding structure to the district court's function, the claim is indefinite.

## VI

Finally, we agree with the district court that no structure exists for the "means for activating" limitation in claim 5 of the '616 patent. Cloud Farm appears to agree with the district court's construction of the function of this means-plus-function claim, and disagrees only with its finding that the specification did not disclose a corresponding structure.

Because this means-plus-function term is a computer-implemented one, the patent must disclose more than a general purpose processor; it must also include an algorithm to perform the function. *See Aristocrat*, 521 F.3d at 1333 ("In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, this court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor."); *see also Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012) (holding that however an algorithm is expressed, it must be a "step-by-step procedure for accomplishing a given result" (citation omitted)). The district court found that the '616 patent discloses only a microprocessor and no algorithm that could implement the claimed function as construed by the court. Cloud Farm disagrees, asserting that the specification does set forth an algorithm, and that the table included in the claim is that algorithm. However, that table is already part of the function construed by the district court and agreed on by the parties. We find that this table is not sufficient for structure. Merely restating the function in the specification is insufficient to provide the required algorithm. *See, e.g.*, *Aristocrat*, 521 F.3d at 1334 ("The equation thus does not disclose the structure of the claimed device, but is only another way of describing the

claimed function."); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) ("This type of purely functional language, which simply restates the function associated with the means-plus-function limitation, is insufficient to provide the required corresponding structure."). Instead of offering the algorithm itself, this table merely offers the output of the algorithm. Nowhere in the patent offers a step-by-step procedure of how to arrive at the outputs disclosed in the table. In other words, the patent offers the ends but not the means, which is not sufficient for structure. *See, e.g.*, *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1384 (Fed. Cir. 2009) ("As such, the language 'describes an outcome, not a means for achieving that outcome.'" (citation omitted)). Therefore, we agree with the district court that the claim is indefinite.

## CONCLUSION

We agree with the district court's claim constructions, and we therefore affirm the judgment of the district court.

## **AFFIRMED**

### COSTS

No costs.